1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7
8
9
10
11
12
13

| | |
|---|---|
| NAKITA AKIL,<br><br>               Plaintiff,<br><br>     v.<br><br>FREEDOM MORTGAGE CORP.,<br><br>               Defendant. | Case No. 3:25-cv-05048-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS |

14

## I.    INTRODUCTION

15
16
17
18
19
20
21

In 2021, Plaintiff Nakita Akil purchased a home with her then-husband in Lakewood, Washington. When the couple divorced, Plaintiff was allowed to retain the home but was required to refinance the property and pay her husband the funds she received from the transaction. Plaintiff reached out to Defendant Freedom Mortgage Corporation, the holder of the home's mortgage. Plaintiff alleges that, after much back and forth, Defendant refused to provide the information necessary to refinance the home. Consequently, Plaintiff claims she was forced to sell the home quickly to satisfy the requirements of the divorce agreement.

22
23
24

Shortly after, Plaintiff sued Defendant, arguing that the company's failure to notify her of changes to her account and refusal to provide necessary information violated the Washington Consumer Loan Act (CLA) and the Washington Consumer Protection Act (CPA). Dkt. 1-1.

Plaintiff also brought a claim for negligent infliction of emotional distress, a consequence of the loss of the home. *Id.* Defendant moved to dismiss the complaint, claiming that Plaintiff had not met the requirements of a CPA claim or a negligent infliction of emotional distress claim. Dkt. 5.

The Court agrees with Defendant as to Plaintiff's claim for negligent infliction of emotional distress. Still, the Court concludes that Plaintiff may remedy these deficiencies. Thus, the Court GRANTS the motion, Dkt. 5, as to the negligent infliction of emotional distress claim. Plaintiff is granted leave to amend her complaint. The Court DENIES the motion as to Plaintiff's other claims, finding that Plaintiff has adequately pled her CPA and related CLA claims. If Plaintiff chooses to amend her complaint, she must do so by April 26, 2025.

Plaintiff later moved for sanctions under Federal Rule of Civil Procedure 11, arguing that Defendant's motion to dismiss misstated both the facts and law and ignored controlling case law. Dkt. 15. The Court DENIES Plaintiff's motion for sanctions, *id.*, concluding that Defendant's actions do not rise to the high bar for sanctionable conduct.

## II.    BACKGROUND

### A.    Factual Background

In September 2021, Plaintiff Nakita Akil bought a home with her then-husband in Lakewood, Washington. Dkt. 1-1 ¶ 4.1. Plaintiff, alongside her husband, signed the Deed of Trust. *Id.* ¶¶ 4.15–4.16. The Deed of Trust defined "Borrower" as "Mazi L. Akil and Nakita S. Akil, HUSBAND AND WIFE." *Id.* ¶ 4.16. The Deed "incorporate[d] the Note and define[d] the Note as, 'the promissory note signed by Borrower and dated September 10, 2021.'" *Id.* ¶ 4.17.

The Akils' marriage did not last. *Id.* ¶ 4.2. They separated and ultimately finalized their divorce on March 23, 2022. *Id.* The divorce decree entered by the court awarded Plaintiff their home in Lakewood. *Id.* ¶ 4.3. Plaintiff's husband thus surrendered his interest in the property through a quitclaim deed. *Id.* ¶ 4.4. In return, the decree required that Plaintiff refinance the loan

into her name within seven months and pay her ex-husband $75,000 from the proceeds of the refinancing. *Id.* ¶ 4.5.

Defendant Freedom Mortgage Corporation was the holder of the loan. *Id.* at 6. On April 7, 2022, Plaintiff contacted Defendant to request information about refinancing the loan. *Id.* ¶ 4.7. Defendant instructed her to mail copies of the divorce decree and quitclaim deed. *Id.* ¶ 4.8. She did so but did not hear back. *Id.* In May 2022, Plaintiff again contacted Defendant. *Id.* ¶ 4.9. Only then did Defendant tell her that "she was no longer an authorized party on the account and that her ex-husband had established a new account password." *Id.* No notice was provided before her removal. *See id.*

On June 6, 2022, Plaintiff again called Defendant who told Plaintiff that they could not provide her with the information necessary because her husband had changed the account password. *Id.* ¶ 4.10. Two days later, Plaintiff again called Defendant who then told her that they could not even discuss the status of the account. *Id.* ¶ 4.11. On August 11, 2022, Plaintiff tried having her attorney call on her behalf to obtain the information. *Id.* ¶ 4.12. This too failed. *Id.* On September 30, 2022, Plaintiff called again, this time to try to make a payment on the loan. *Id.* ¶ 4.13. Defendant told Plaintiff that she "could not access the account because she did not sign the mortgage loan document, and she was no longer on the account." *Id.* ¶ 4.14.

Plaintiff alleges that Defendant's decision to remove her from the account and refusal to provide access prevented her from gathering the information necessary to refinance the home. *Id.* ¶ 4.9. She tried to contact lenders to refinance, but because she could not provide information about the loan held by Defendant, she alleges that they all refused her. *Id.* ¶ 4.20.

In October 2022, Plaintiff "began to receive notices of a pending foreclosure" because no payments had been made on the loan. *See id.* ¶ 4.19. And in November 2022, Plaintiff's ex-husband successfully petitioned the court to force the sale of the home under the divorce decree.

1    *Id.* ¶ 4.21. The next month, the court directed the house be put on the market. *Id.* ¶ 4.22. Plaintiff

2    alleges the home—which had to be sold swiftly to satisfy her responsibilities under the decree—

3    was sold at substantially less than market value. *Id.* ¶ 4.23.

4          After the sale, Plaintiff filed a complaint with the State of Washington Department of

5    Financial Institutions ("DFI") Division of Consumer Services. *Id.* ¶ 4.24. DFI responded. *Id.*

6    They found that Defendant "likely violated the Consumer Loan Act . . . when it failed to provide

7    [Plaintiff] the information that she needed to refinance the mortgage, and when [Defendant]

8    failed to notify [Plaintiff] that she had been removed as an authorized party until she called back

9    asking for an update." *Id.*

10         Plaintiff claims that, because of Defendant's actions, she was "forced to sell the home for

11   less than its fair market value, lost the future equity in her home and incurred additional expenses

12   associated with relocating." *Id.* ¶ 4.25. Plaintiff sued Defendant, alleging violations of

13   Washington's Consumer Protection Act (CPA); violation of the Consumer Loan Act (CLA), a

14   *per se* violation of the CPA; and negligent infliction of emotional distress. *Id.* ¶¶ 5.1–7.5.

**B.    Procedural Background**

16         Plaintiff first filed her case in Pierce County Superior Court. Dkt. 1 at 1. Defendant

17   removed the case to this court on January 20, 2025 based on diversity jurisdiction. *Id.* at 2–3. On

18   January 31, 2025, Defendant moved to dismiss Plaintiff's complaint. Dkt. 5. Defendant argued

19   that plaintiff had failed to adequately plead various elements of her CPA claims. *Id.* at 3–8. And

20   Defendant argued that Plaintiff's negligent infliction of emotional distress claim did not plead

21   that Defendant owed Plaintiff a duty. *Id.* at 9–10. Plaintiff responded on March 7, 2025, *see*

22   Dkt. 12, and Defendant replied on March 14, *see* Dkt. 13.

23         On March 18, 2025, Plaintiff's counsel moved for sanctions against Defense counsel.

24   Dkt. 15. Defendant responded on April 2, 2025. Dkt. 19. Plaintiff's counsel offered two reasons

for sanctions. First, Plaintiff's counsel claimed that Defendant's motion to dismiss "misrepresented that Plaintiff had not alleged a per se unfair trade practice, which she had." Dkt. 16 ¶ 4. Second, Plaintiff's counsel argued that Defense counsel "misrepresented that a plaintiff bringing a non-per se CPA claim based on an 'unfair' act or practice must establish that the alleged act 'had the capacity to deceive a substantial portion of the public,' which is an incorrect statement of law that has been directly addressed by Washington's Supreme Court." *Id.* In Defendant's reply to Plaintiff's response on the motion to dismiss, Defendant corrected the alleged factual misrepresentation. *Id.* ¶ 6 (citing Dkt. 13 at 6 n.2). Plaintiff's Counsel no longer moves for sanctions on this issue. *Id.* ¶ 4. Plaintiff seeks sanctions only for the "incorrect statement of law." *Id.* ¶ 7.

Both motions have been fully briefed and are ripe for the Court's consideration.

### III.    LEGAL STANDARD

**A.    Jurisdictional Analysis**

Before addressing each motion's merits, the Court must confirm that it has subject matter jurisdiction over the parties' claims. *See United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments. . . ." and it has an obligation to establish subject matter jurisdiction "*sua sponte*, whether the parties raised the issue or not.").

"[T]he burden of establishing [jurisdiction] rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Defendant alleges in its notice of removal that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. 1 at 2–3.

The Court has diversity jurisdiction over this action because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different states. Defendant is a New

Jersey corporation with its principal place of business in Florida. *Id.* at 2. Plaintiff is a citizen of Washington. *Id.* There is complete diversity of citizenship between the opposing parties. *See* 28 U.S.C. § 1332(c); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

The amount in controversy requirement is also met. The mortgage loan at issue had an original principal amount of $543,945. Dkt. 1 at 3 (citing Dkt. 1-1 ¶ 4.17). In her complaint, Plaintiff alleges that due to Defendant's actions, she "was forced to sell the home for less than its fair market value, lost the future equity in her home and incurred additional expenses associated with relocating. She also incurred the expense of having the situation investigated by an attorney." Dkt. 1-6 ¶ 4.25. Plaintiff also seeks damages for emotional distress, treatment for medically diagnosed anxiety, treble damages under the Washington Consumer Protection Act, and attorney's fees. *Id.* ¶¶ 7.4–8. This is sufficient to conclude that the amount in controversy exceeds $75,000.

Because the Court is sitting in diversity, substantive claims are governed by state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

## B.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## C.    Rule 11 Sanctions

Rule 11 authorizes courts to impose various sanctions to "deter baseless filings and curb abuses." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991) (citation omitted). An attorney is subject to Rule 11 sanctions "when he presents to the court 'claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675–76 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11(b)(2)). "A party violates Federal Rule of Civil Procedure 11(b) by submitting pleadings for an improper purpose or making claims or factual contentions without legal or evidentiary support." *Simmonds v. Credit Suisse Sec. (USA) LLC*, No. C12-1937-JLR,

2013 WL 2319401, at *2 (W.D. Wash. May 28, 2013). Rule 11 is meant "to address frivolous or abusive filings." *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1065 (9th Cir. 2014).

Rule 11 sanctions are "an extraordinary remedy" and thus "reserved for the rare and exceptional cases where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Lee v. Pow Ent., Inc.*, No. 20-55928, 2021 WL 5768462, at *2 (9th Cir. Dec. 6, 2021) (cleaned up).

## IV.    DISCUSSION – MOTION TO DISMISS

### A.    Plaintiff has adequately pled a violation of the CLA, a per se violation of the CPA.

#### 1.    *Plaintiff is a borrower under the CLA.*

The Court first turns to Plaintiff's allegations under the CLA and CPA. Defendant argues that Plaintiff cannot bring a CLA claim because Plaintiff has "failed to establish that she was a 'borrower.'" Dkt. 5 at 6. Defendant contends that because Plaintiff was not on the Note incorporated in the Deed of Trust, she is not a borrower. *Id*. Defendant cites to the Black's Law Dictionary definition of borrower. *Id.* at 7. And Defendant cites the Washington Revenue Code, though not to the relevant portions of the CLA. *Id.* The cases that Defendant cites do not address the CLA either. *Id.* at 6–7.

Yet Plaintiff brings her claim under the CLA. Dkt. 1-1 ¶¶ 6.1–6.6. And, as Defendant acknowledges, this provision requires that, "to prevail on her CLA claim, Plaintiff must establish that she is, in fact, *a borrower under the CLA*." Dkt. 13 at 3 (emphasis added).

The structure of the CLA and principles of statutory interpretation support this conclusion. The Court's "fundamental purpose in construing a statute is to ascertain and carry out the intent of the legislature." *Matter of Marriage of Cardwell*, 16 Wn. App. 2d 90, 98, 479 P.3d 1188 (2021). Courts applying Washington law "derive legislative intent solely from the

plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole." *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Rev.*, 196 Wn.2d 1, 7–8, 468 P.3d 1056 (2020). Thus, "[i]t is an axiom of statutory interpretation that where a term is defined we will use that definition." *United States v. Hoffman*, 154 Wn. 2d 730, 741, 116 P.3d 999 (2005), *as amended* (Aug. 25, 2005) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn. 2d 801, 813, 828 P.2d 549 (1992)). Only if a term is undefined will a court rely on the plain and ordinary meaning. *See id.*

The CLA defines a borrower as:

> [A]ny person who consults with or retains a licensee or person subject to this chapter in an effort to obtain, or who seeks information about obtaining a loan, regardless of whether that person actually obtains such a loan. "Borrower" includes a person who consults with or retains a licensee or person subject to this chapter in an effort to obtain, or who seeks information about obtaining a residential mortgage loan modification, regardless of whether that person actually obtains a residential mortgage loan modification.

RCW 31.04.015(4). A "residential mortgage loan modification" means a "change in one or more of a residential mortgage loan's terms or conditions. Changes to a residential mortgage loan's terms or conditions include but are not limited to forbearances; repayment plans; changes in interest rates, loan terms, or loan types; capitalizations of arrearages; or principal reductions." RCW 31.04.015(25). And "residential mortgage loan modification services" include "negotiating, attempting to negotiate, arranging, attempting to arrange, or otherwise offering to perform a residential mortgage loan modification for compensation or gain." RCW 31.04.015(26). These services "also include[] the collection of data for submission to an entity performing mortgage loan modification services." *Id.*

The legislature expressly incorporated these definitions into the other portions of the statute. Under the definitions section of the CLA, RCW 31.04.015, the legislature wrote: "The definitions set forth in this section apply throughout this chapter unless the context clearly

requires a different meaning." Accordingly, it is the above definition of borrower—not one derived from a dictionary or unrelated case law—that controls Plaintiff's status here.

Under this definition, Plaintiff has sufficiently pled that she is a borrower. Plaintiff "consulted with [Defendant] to obtain information necessary to obtain a loan" satisfying the CLA's definition of "borrower." Dkt. 1-1 ¶ 6.3. She sought a residential mortgage loan modification—refinancing the loan held by Defendant. *Id.* at 6. This is plainly within the CLA definition of residential mortgage loan modifications and services.

    2.    *There is no private right of action under the CLA, but Plaintiff may bring her CLA claim through the CPA.*

Defendant next claims that even if Plaintiff is a borrower, Plaintiff cannot bring a CLA claim because there is no private right of action under the CLA. Dkt. 5 at 6. Defendant is correct that the CLA does not afford a private right of action. *Est. of Brantner v. Ocwen Loan Servicing, LLC*, No. C17-582 TSZ, 2021 WL 3053055, at *4 (W.D. Wash. July 20, 2021) (quoting RCW 31.04.208); *see also Saepoff v. HSBC Bank USA as Tr. for Ace Sec. Corp. Home Equity Loan Tr. 2007-WM2*, No. 20-36031, 2022 WL 1500799, at *1 (9th Cir. May 12, 2022) ("Saepoff's standalone Consumer Loan Act claim fails because there is no private right of action for violations under § 31.04.027.").

But private actions are cognizable under the CLA through the CPA. Under the CPA, a "*per se* unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Ride the Ducks Seattle LLC v. Ride the Ducks Int'l LLC*, 647 F. Supp. 3d 1049, 1058 (W.D. Wash. 2022) (quoting *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 786, 719 P.2d 531(Wash. 1986)). The CLA provides that "[a]ny violation of this chapter is not reasonable in relation to the development and preservation of business and is *an unfair and deceptive act or*

*practice* and unfair method of competition in the conduct of trade or commerce in violation of RCW 19.86.020." *Est. of Brantner*, 2021 WL 3053055, at *4 (quoting RCW 31.04.208) (emphasis added). The Washington legislature thus intended that a violation of the CLA create a basis for a per se CPA claim. *See id.*

Thus, violations of the CLA are cognizable as unfair and deceptive acts under the CPA. *See, e.g.*, *Buehler v. Nationstar Mortage LLC*, No. 3:24-CV-05759-DGE, 2024 WL 5074946, at *9 (W.D. Wash. Dec. 10, 2024) (citation omitted) ("[T]he claimed CLA violations are alleged in support of a CPA claim, which would be an actionable claim."); *Russell v. WADOT Cap., Inc.*, No. C22-0531JLR, 2024 WL 4451541, at *20 (W.D. Wash. Oct. 9, 2024), *motion to certify appeal denied*, No. C22-0531JLR, 2024 WL 4665566 (W.D. Wash. Nov. 4, 2024) (similar).

Defendant concedes that "a plaintiff can rely on a violation of the CLA to establish a *per se* violation of the CPA." Dkt. 13 at 6. Still Defendant argues that "Plaintiff's claim fails as a matter of law," because she is not a borrower under the CLA. *Id.*; *see also id.* at 5 ("Plaintiff cannot rely on Freedom's alleged violation of the CLA to establish any of the essential elements of her CPA claim because, as noted above, her CLA claim fails as a matter of law because she is not a borrower."). But, as explained above, Plaintiff is a borrower under the CLA, and she has sufficiently pled a CLA violation. Defendant's argument fails.

**B.    Plaintiff has sufficiently pled a per se violation of the CPA.**

The Court turns to the CPA's elements. The CPA requires that a plaintiff prove "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Ride the Ducks Seattle LLC*, 647 F. Supp. 3d at 1054 (citing *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009). The first three elements "may be established by a showing that the alleged act constitutes a *per se* unfair trade practice." *Est. of Coineandubh v. Boeing Emps. Credit*

*Union*, No. 3:19-CV-05527-RBL, 2019 WL 3859726, at *5 (W.D. Wash. Aug. 16, 2019) (quoting *Hangman Ridge*, 105 Wn. 2d at 786).[1]

Plaintiff has sufficiently pled a CLA violation, satisfying the first three elements of a CPA claim. As explained above, Plaintiff has shown that she is a borrower under the CLA. *See, supra*, section IV.A.1. Plaintiff has also pled that Defendant is a residential mortgage loan servicer, subject to the requirements of the law. RCW 31.04.015(18)(a), (25)–(26); Dkt. 1-1 ¶¶ 4.6, 6.2. And Plaintiff has also shown that she was pursuing information necessary for a loan modification. *See* RCW 31.04.015(25); Dkt. 1-1 ¶ 4.6. The complaint explains that Plaintiff sought to refinance the loan—altering the loan terms and repayment plan—to satisfy the requirements of the divorce decree. RCW 31.04.015(25); Dkt. 1-1 ¶¶ 4.5–4.6.

Plaintiff claims that Defendant violated RCW 31.04.290. Dkt. 1-1 ¶ 6.1. The provision requires that a residential loan servicer "[m]ust provide a written statement to the borrower within fifteen business days of receipt of a written request from the borrower." RCW 31.04.290(1)(d)(ii). And the residential loan servicer must "[p]romptly correct any errors and refund any fees assessed to the borrower resulting from the servicer's error." RCW 31.04.290(1)(e).

Plaintiff's complaint explains that she first tried to contact Defendant and obtain the necessary information on or about April 7, 2022. Dkt. 1-1 ¶¶ 4.6–4.7. Defendant instructed her to

---

[1] Some courts have held that a per se violation satisfies only the first two prongs of a CPA claim. But the CLA, like other statutes, contains "declarations of public policy which meet the per se public interest requirement." *In re Bryce*, 491 B.R. 157, 185 (Bankr. W.D. Wash. 2013). The CLA also explains that "the practices governed by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act" and it violates the CLA to "[d]irectly or indirectly engage in any unfair or deceptive practice toward any person[.]" *Sutter v. Glob. Equity Fin., Inc.*, No. 2:22-CV-00105-MKD, 2023 WL 3872202, at *3 (E.D. Wash. June 7, 2023) (first citing RCW 31.04.208; and then citing RCW 31.04.027(1)(b)). Accordingly, under the CLA, prong three would also be satisfied.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS - 12

mail copies of the divorce decree and quitclaim deed to the company. *Id.* ¶ 4.8. Plaintiff did so, but had not heard back from Defendant by May, and contacted Defendant again. *Id.* ¶¶ 4.8–4.9. In fact, Plaintiff alleges that she called Defendant multiple times between April and September 2022. *Id.* ¶ 4.6. And she claims Defendant never provided the relevant information. *Id.* ¶ 4.20. Plaintiff has thus adequately pled that Defendant violated RCW 31.04.290 by failing to provide necessary loan information within fifteen days of her request.

The Court thus moves on to the two remaining CPA elements. The fourth element requires that the plaintiff prove "injur[y] to a person's business or property." RCW 19.86.090. "Nothing in this language requires that the plaintiff must be a consumer or in a business relationship with the actor." *Panag*, 166 Wn.2d at 39. The injuries compensable under the CPA are "relatively expansive." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014). The injury requirement may be satisfied by proof that the plaintiff's "property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Panag*, 166 Wn.2d at 57 (citation omitted). This may include "[i]nvestigative expenses, taking time off from work, travel expenses, and attorney fees[.]" *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 320, 308 P.3d 716 (2013), *as modified* (Aug. 26, 2013). But the injury element is not satisfied by personal injuries such as "mental distress, embarrassment, and inconvenience," or "the financial consequences of such personal injuries." *Frias*, 181 Wn.2d at 431.

Plaintiff has pled that she "lost equity in the home that would have been realized had she not been forced to sell; investigation costs incurred to understand her rights relative to the mortgage and information regarding the home; fees and interest incurred because she was unable to make timely payments on the home, which she paid upon the sale of the home; damage to her credit rating; moving costs and rental costs that would not have otherwise been incurred; and,

other quantifiable damages due to the loss of the home and her reputation." Dkt. 1-1 ¶ 5.10.

Courts have long held that "loss of use of property which is causally related to an unfair or

deceptive act or practice is sufficient injury to constitute the fourth element" of a CPA violation.

*Spicher v. Am. Fam. Mut. Ins. Co*., S.I., No. C22-1116 MJP, 2023 WL 5634210, at *4 (W.D.

Wash. Aug. 31, 2023) (quoting *Mason v. Mortg. Am., Inc*., 114 Wn.2d 842, 854, 792 P.2d 142

(1990)). "The injury element will be met if the consumer's property interest or money is

diminished because of the unlawful conduct even if the expenses caused by the statutory

violation are minimal." *Id.* (quoting *Mason*, 114 Wn.2d at 854). The loss of Plaintiff's home, and

the related costs, are injuries under the CPA.

Plaintiff has also pled that she incurred "the expense of having the situation investigated

by an attorney." Dkt. 1-1 ¶ 4.25. She explains in the complaint that she had her attorney call on

her behalf to try to gather the necessary information from Defendant. *Id.* ¶ 4.12. Though

attorneys' fees incurred in bringing a CPA claim do not qualify as a compensable injury,

expenses incurred to investigate a CPA claim may qualify if they are "beyond the expenses of

litigating her personal injury claim." *Spicher*, 2023 WL 5634210, at *4 (quoting *Panag*, 166

Wn.2d at 62–65). These investigatory costs also qualify as injuries under the CPA. Thus, the

fourth element of a CPA claim is satisfied.

The Court moves onto the fifth and final element: causation. "A causal link is required

between the unfair or deceptive acts and the injury suffered by plaintiff." *Hangman Ridge*, 105

Wn.2d at 793. The Washington Supreme Court has imposed a proximate cause standard,

meaning that, to prove causation, the "plaintiff must establish that, but for the defendant's unfair

or deceptive practice, the plaintiff would not have suffered an injury." *WPI 15.01.5 Indoor

Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc*., 162 Wn.2d 59, 84, 170 P.3d 10 (2007).

Here too, Plaintiff has adequately pled causation. Plaintiff has explained that, but for Defendant's refusal to give her access to the account and her loan information, she would have been able to refinance the home. Dkt. 1-1 ¶¶ 4.19–4.20, 4.25. She notes that she tried to contact "other lenders to refinance the home, but she was unable to refinance because [Defendant] would not provide her access to the account." *Id.* ¶ 4.20. Defendant even concedes "without a refinance, there would be no funds available to the Plaintiff to satisfy her obligations under the divorce degree." Dkt. 13 at 4. Thus, this final element is satisfied.

Plaintiff has sufficiently pled a per se violation of the CPA by pleading her CLA claim and the remaining elements. Defendant's motion to dismiss this claim is DENIED.

## C. Plaintiff has also pled a general violation of the CPA.

"In addition to establishing a *per se* violation of the CPA, a plaintiff may establish that an act was 'unfair or deceptive' although not prohibited by statute." *Sutter*, 2023 WL 3872202, at *6 (citing *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 785, 295 P.3d 1179 (2013)). Having already found the final two factors satisfied, the Court now examines the first three. If Plaintiff cannot satisfy one of these requirements, then her general CPA claim will fail. *Hunter v. Bank of Am., N.A.*, No. C16-1718 RAJ, 2019 WL 1115258, at *4 (W.D. Wash. Mar. 11, 2019) (quoting *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002) ("Failure to satisfy even one of the elements is fatal to a CPA claim.")).

The first element requires "an unfair or deceptive act or practice." *Hangman Ridge*, 105 Wn.2d at 780. The element may be satisfied one of three ways: a *per se* violation of a statute (as explained above), "an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem*, 176 Wn.2d at 787.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS - 15

But Defendant makes a more binary argument, claiming that Plaintiff "may satisfy the first element by pleading either that the defendant engaged in an act or practice which has a capacity to deceive a substantial portion of the public, or is a *per se* unfair trade practice." Dkt. 5 at 4. Defendant thus argues that Plaintiff must satisfy the "substantial portion of the public" test for a deceptive act. *Id.* And Defendant maintains that Plaintiff has failed to do so. *Id.* at 5 ("Specifically, Plaintiff failed to show how this extremely narrow factual scenario–Freedom not providing account information to her when she is not a party to the Note–has the capacity to injure a substantial portion of the general public."); *see also* Dkt. 13 at 8.

In 2013, the Washington Supreme Court rejected such an argument. In *Klem v. Washington Mutual Bank*, the Court explained:

> The "or" between "unfair" and "deceptive" is disjunctive. Washington's CPA is modeled after federal consumer protection laws and incorporates many of provisions of the federal acts. . . . The legislature declared the CPA was intended "to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." . . . The Washington Legislature instructed courts to be guided by federal law in the area. . . . Current federal law suggests a "practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits."
>
> . . .
>
> Our statute clearly establishes that unfair acts or practices can be the basis for a CPA action.

176 Wn. 2d at 787 (cleaned up). The *Klem* court even more clearly stated, "[t]o resolve any confusion, we hold that a claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* Accordingly, Plaintiff may choose to plead that Defendant committed a deceptive act *or* an unfair act. *See id.* She is not limited to only the former. *See id.*

Plaintiff's complaint is not entirely clear on which path she chose. Plaintiff notes that Defendant's "acts described herein are unfair or deceptive." Dkt. 1-1 ¶ 5.7. And she writes that Defendant's "unfair acts or practices occurred in trade or commerce and were capable of injuring a substantial portion of the public." *Id.* ¶ 5.8. Yet in her response to Defendant's motion to dismiss, Plaintiff appears to claim only an unfair act or practice. Dkt. 12 at 10–15. The Court thus considers only this path.

The CPA does not define unfair. *Klem*, 176 Wn.2d at 785 ("[B]ecause the act does not define 'unfair' or 'deceptive,' this court has allowed the definitions to evolve through a 'gradual process of judicial inclusion and exclusion.'") (quoting *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 344, 779 P.2d 249 (1989)). The Washington Supreme Court has, however, "recognized that '[b]y broadly prohibiting 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation.'" *Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 454, 553 P.3d 626 (Wash. 2024), *as amended* (Aug. 16, 2024) (quoting *Panag*, 166 Wn.2d at 49); *see also Klem*, 176 Wn.2d at 786 ("Given that there is 'no limit to human inventiveness,' courts, as well as legislatures, must be able to determine whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA."). Some courts have tried to provide guidance, holding that a practice may be unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." *Ride the Ducks*, 647 F. Supp. 3d at 1055 (quoting *Klem*, 176 Wn.2d at 787).

A plaintiff "may satisfy the first element of a private CPA claim—an unfair or deceptive act—in a number of ways." *Greenberg*, 3 Wn.3d at 481 (Madsen, J., concurring). A plaintiff may allege that an act "is in violation of the public interest." *Id.* (first citing *Klem*, 176 Wash.2d at

787, 295 P.3d 1179; and then citing 16 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice § 8:5, at 445–46 (5th ed. 2023–24)). Or a plaintiff may claim that an act is "unethical, oppressive, or unscrupulous[.]" *Id.* (quoting *Magney v. Lincoln Mut. Sav. Bank*, 34 Wash. App. 45, 57, 659 P.2d 537 (1983)). A plaintiff may also allege that the acts "cause or are likely to cause 'substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits' to consumers or to competition." *Id.* (quoting *Klem*, 176 Wash.2d at 787). "In short, plaintiffs may demonstrate an unfair act or practice by relying on a variety of factors, outlined in both Washington and federal law." *Id.*

Plaintiff has done so here. Plaintiff explains that Defendant removed her access to the loan information, failed to notify her of the password change, refused to provide her loan information, and refused to accept loan payments—even after she provided a copy of her divorce decree and her ex-husband's quit-claim deed. Dkt. 1-1 ¶¶ 4.6–4.14. Not all of these acts violate the CLA's provisions under RCW 31.04.290 (requirements for written detailed information). But they are still unfair under the various frameworks above. For example, in her opposition, Plaintiff argues that "FMC services thousands of mortgages. Its actions alleged here are a part of its common practice when servicing loans. Therefore, its actions have the capacity to injure other persons." Dkt. 12 at 14 (citing Dkt. 1-1 ¶ 5.9). In its briefing Defendant claims that the acts involved could only ever hurt Plaintiff because it is undisputed that "other members of the public (i.e., third parties) would certainly not be entitled to" Plaintiff's account information. Dkt. 5 at 5. Defendant misconstrues Plaintiff's claim. Plaintiff does not maintain that Defendant should have released her information to others. Rather, she argues that the practices that harmed her—such as failing to notify a party on an account that they have been removed by another party, Dkt. 1-1

¶ 4.9—may also injure others. Such a practice could substantially injure other consumers who hold loans with Defendant. *See Greenberg*, 2 Wn.3d at 481.

Because Plaintiff has satisfied the first CPA element, the Court turns to the second. Whether an act "occurred in trade or commerce" is a much simpler question. The Legislature has broadly defined the terms "trade" and "commerce" to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." *Hangman*, 105 Wn.2d at 785 (quoting RCW 19.86.010(2)). "The CPA, on its face, shows a carefully drafted attempt to bring within its reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce." *Id.* (citation omitted). Defendant provides loan services in the Washington market. *See* Dkt. 1-1 ¶ 4.6, 5.9. Thus, Defendant's acts occurred in the loan servicing market and in "trade or commerce." The second element is satisfied.

Finally, the Court turns to the third element: public interest. In *Estate of Brantner v. Ocwen Loan Servicing, LLC*, the court explained that private disputes can garner public interest if "additional plaintiffs have been or will be injured in exactly the same fashion," as measured by several factors: "(i) whether the alleged acts were committed in the course of the defendant's business; (ii) whether the defendant advertised to the public in general; (iii) whether the defendant actively solicited the particular plaintiff, thereby indicating potential solicitation of others; and (iv) whether the plaintiff and the defendant occupy unequal bargaining positions." No. C17-582 TSZ, 2021 WL 3053055, at *12 (W.D. Wash. July 20, 2021) (citing *Hangman Ridge*, 105 2d at 790–91). The factors "are neither conjunctive nor dispositive; not all need be met and no one factor alone decides the issue." *Id.*

Defendant's acts were committed in the course of its business. Defendant is a loan servicer, whom Plaintiff alleges serves "thousands of mortgages." Dkt. 1-1 ¶ 5.9. Defendant's

actions here were committed while servicing the mortgage on Plaintiff's home. *See id.* ¶¶ 4.6–4.14.

Plaintiff and Defendant also did not occupy equal bargaining positions. Plaintiff required the information to refinance the loan on her home, which she needed to do by a predetermined deadline to satisfy the divorce decree. *See id.* ¶¶ 4.6–4.9, 4.19–4.20.

And, despite Defendant's contention that their actions are obviously limited to Plaintiff and could never reoccur, *see* Dkt. 5 at 5, the Court disagrees. Defendant argues that "Plaintiff failed to show how this extremely narrow factual scenario–Freedom not providing account information to her when she is not a party to the Note–has the capacity to injure a substantial portion of the public." *Id.* Defendant explains, "it cannot be disputed that other members of the public (i.e., third parties) would certainly not be entitled to account information regarding the Property" and thus "at best, the only person that could arguably be harmed by Freedom's actions is the Plaintiff[.]" *Id.* But common sense dictates that additional plaintiffs could be injured in identical fashion. The concern is not whether the public could access Plaintiff's loan information. The concern is that a loan holder may not be told that they have been removed from their account promptly, Dkt. 1-1 ¶ 4.9, that a loan holder may be unable to gather information necessary to refinance, *id.* ¶ 4.19, and that Defendant may refuse to comply with the CLA's information requirements, *id.* ¶ 6.1.

Thus, the Court finds that Plaintiff has also sufficiently pled a CPA claim not reliant on a CLA violation. The motion to dismiss is DENIED.

**D.    Plaintiff has not pled all the elements of a negligent infliction of emotional distress claim.**

Defendant also moves to dismiss Plaintiff's claim for negligent infliction of emotional distress. "A plaintiff may recover on a claim for negligent infliction of emotional distress by

proving negligent conduct, which consists of the familiar elements of duty, breach, proximate cause, and harm, as well as that the resulting emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1235–36 (W.D. Wash. 2015) (first citing *Schmidt v. Coogan*, 181 Wn.2d 661, 335 P.3d 424 (2014); and then citing *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 325 P.3d 193 (2014)).

Defendant's argument focuses largely on duty. Defendant maintains that 1) the duty arises from a contract between the parties, and that 2) such a duty cannot support a claim in tort. Dkt. 5 at 9. Defendant explains that Plaintiff alleges in the Complaint that the company "held the mortgage on the home owned by Ms. Akil. This created a professional duty of care toward Ms. Akil." *Id.* (quoting Dkt. 1-1 ¶ 7.1). Defendant concludes that this is an express "admission that any duty owed to Plaintiff by Freedom existed via the contractual relationship between the parties." *Id.*

Defendant is correct that Plaintiff cannot rely on the contract as the basis for duty. The mortgage agreement is a contract. *See Garand v. JPMorgan Chase Bank*, 532 F. App'x 693, 696 (9th Cir. 2013) ("the rights and obligations of the parties are dictated by express contracts—the first mortgage note and deed of trust."). And, under Washington law, a breach of contract does not give rise to a tort action. *Millheisler v. Lincoln High Sch.*, No. C07-5716RJB, 2008 WL 4443818, at *13 (W.D. Wash. Sept. 24, 2008). "Only 'if a duty exists independently of the performance of the contract' can a contract provide the basis for a tort claim." *Id.* (quoting *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 230, 797 P.2d 477 (1990)). Also known as the independent duty doctrine, this rule "prevents [p]laintiffs in a contractual relationship with [a] defendant from bringing claims for injuries from a breach of a tort law duty of care that do not arise independently of the contract." *Andersen v. Lewis*

*McCord Communities LLC*, No. 3:21-CV-05391-DGE, 2022 WL 874774, at *5 (W.D. Wash. Mar. 24, 2022). The Washington Supreme Court "has applied this doctrine sparingly." *Id.* (citing *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 969 (Wash. 2012)).

Plaintiff's complaint fails to offer an alternative basis for duty. The complaint explains, without incorporating or referencing previous paragraphs, that Defendant "held the mortgage on the home owned by Ms. Akil. This relationship created a professional duty of care toward Ms. Akil." Dkt. 1-1 ¶ 7.1. Thus, Plaintiff alleges duty arising out of the contract, and no more. She does not plead an injury that arises independently from the terms of the contract that gives rise to an independent duty.

In her response, Plaintiff argues that, under Washington law, duty may be established based on a statutory violation. *See, e.g.*, *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1086 (W.D. Wash. 2024) (discussing statutory duty of health care providers to protect private health information). Still, Plaintiff has not pled that a statutory violation is the basis for Defendant's duty, even though she raised it in her response to Defendant's motion. The Court thus cannot find that such a relationship existed based on the face of the complaint.

Because the Court cannot find that Plaintiff has adequately pled the first element of her negligent infliction of emotional distress claim, the motion to dismiss the claim is GRANTED. This claim is DISMISSED without prejudice, and Plaintiff is granted leave to amend if she so chooses.

## V.    DISCUSSION – RULE 11 SANCTIONS

### A.    Plaintiff has satisfied Rule 11's safe harbor requirement.

Rule 11(c) authorizes the court to award sanctions subject to certain conditions. One such condition is the 21-day "safe harbor" laid out in Rule 11(c)(2). The rule clarifies that a "motion must [first] be served under Rule 5, but it must not be filed or be presented to the court if the

challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

within 21 days after service or within another time the court sets."

 In Plaintiff's motion, counsel certifies that he complied with Rule 11(c)(2). Dkt. 15 at 8.

Plaintiff's counsel explains that he served the motion on Defendant's counsel on February 24,

2025. *Id.* Plaintiff's counsel sent the draft motion by both email and by regular mail. Dkt. 16 ¶ 2;

Dkt. 17 at 3. Plaintiff's counsel did not file the motion until March 18, 2025. Dkt. 15 at 8. Thus,

twenty-one days had passed between the service of the motion and its filing. Accordingly, Rule

11(c)(2) is satisfied.

**B.    Defendant's actions did not violate Rule 11.**

As explained above, Plaintiff's counsel initially moved for sanctions on two grounds.

First, Plaintiff argued, Defendant's motion to dismiss "misrepresented that Plaintiff had not

alleged a per se unfair trade practice, which she had." Dkt. 16 ¶ 4. And second, Plaintiff

maintained that Defense counsel "misrepresented that a plaintiff bringing a non-per se CPA

claim based on an 'unfair' act or practice must establish that the alleged act 'had the capacity to

deceive a substantial portion of the public,'"—an "incorrect statement of law that has been

directly addressed by Washington's Supreme Court." *Id.* Defendant has since corrected the first

issue. *Id.* ¶ 6. Plaintiff's Counsel has thus abandoned this claim. *Id.* Plaintiff now only seeks

sanctions for the "incorrect statement of law." *Id.* ¶ 7.

Under Rule 11, a party can argue that a claim is unwarranted by existing law. "Under this

approach, a pleading or motion is not 'warranted by law' where no 'plausible, good faith

argument can be made by a competent attorney' in support of the proposition asserted.'"

*Holmberg v. Vail*, No. C11-5449 BHS/KLS, 2012 WL 380043, at *4 (W.D. Wash. Jan. 3, 2012),

*report and recommendation adopted*, No. C11-5449BHS, 2012 WL 380002 (W.D. Wash. Feb. 6,

2012) (quoting *Paciulan v. George*, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999)). Alternatively,

a party can argue that a claim or motion is made for an improper purpose or is frivolous. *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109. The standard governing both the "improper purpose" and "frivolous" inquiries is objective. *Id.* "[T]he subjective intent of the . . . movant to file a meritorious document is of no moment. The standard is reasonableness. The 'reasonable man' against which conduct is tested is a competent attorney admitted to practice before the district court." *Id.* (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)).

Plaintiff argues that Defendant "misrepresents Washington law regarding" the CPA. Dkt. 15 at 2. Plaintiff claims that Defendant cites only "14-year-old unpublished cases" that "are not good law." *Id.* And Plaintiff contends that Defendant "omitted controlling precedent from the Washington Supreme Court" in doing so. Dkt. 20 at 1. Plaintiff explains that, despite Defendant's contentions to the contrary, the first element of a CPA claim can be established by showing that an act is either unfair *or* deceptive. Dkt. 15 at 3. Plaintiff claims that Defense counsel's arguments were not made in good faith for changing or extending the law and were "rather a mischaracterization of established precedent." *Id.* at 7. Plaintiff concludes that Defense counsel thus violated Rule 11 by "fail[ing] to conduct a reasonable inquiry into the legal principles governing this case[.]" *Id.*

Defense counsel's response offers some clarity into these alleged misstatements of law. Dkt. 19. Defendant acknowledges that Plaintiff has three paths to choose from to allege a CPA claim: a per se unfair act, an unfair act, or a deceptive act. Dkt. 19 at 5 ("Indeed, both parties agree that '[a] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest.'") (quoting *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 10 (Wash. Ct. App. 2019), aff'd, 472

P.3d 990 (Wash. 2020)). This concession reiterates what Defendant wrote in its reply brief: "Plaintiff has not adequately pled, and therefore has not established, that Freedom's conduct was unfair or deceptive." Dkt. 13 at 6. Defendant has not argued that Plaintiff can only plead a "deceptive practice." *See id.* Rather, Defendant urges the Court that Plaintiff is alleging a deceptive act and that the deceptive act's "substantial portion of the public test" is appropriate here. Dkt. 19 at 6.

Thus, it appears Defendant did not attempt to misstate or mischaracterize the law. Instead, Defendant seems to have misunderstood Plaintiff's complaint. As discussed above, Plaintiff's complaint looks as if it alleges both that Defendant committed an unfair act and that the act was deceptive. Dkt. 1-1 ¶ 5.7. Plaintiff argues in her complaint that Defendant's acts "described herein are unfair or deceptive." *Id.* She also states that Defendant's "unfair acts or practices occurred in-trade or commerce and were and are capable of injuring a substantial portion of the public." *Id.* ¶ 5.8. Accordingly, Defendant's argument that Plaintiff did not adequately plead a deceptive act is not frivolous or in bad faith. *See id.* Plaintiff, after all, does not clearly choose a path to plead her CPA claim in her complaint. *See id.* ¶ 5.1–5.11. The Court will not sanction Defendant for this mistake.

As Defendant points out, "a simple misreading or misinterpretation of Plaintiff's complaint does not evidence" that Defendant's motion violated Rule 11. Dkt. 19 at 6 n.1. *Holmberg*, 2012 WL 380043, at *4. Defendant does not make a "pure heart, empty head" defense. Dkt. 20 at 5 (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), *aff'd*, 498 U.S. 533 (1991)). Defendant argues that it reasonably misunderstood Plaintiff's complaint and responded accordingly. *Wilson*, 326 F.3d at 1109 ("[T]he subjective intent of the . . . movant to file a meritorious document is of no moment. The standard is reasonableness. The 'reasonable man' against which conduct is tested is a competent

attorney admitted to practice before the district court.") (citation omitted). In the context of Plaintiff's complaint, this argument is persuasive enough to avoid sanctions under Rule 11.

Thus, the Court DENIES the motion for sanctions.

## VI.    CONCLUSION

For these reasons, the motion to dismiss (Dkt. 5) is GRANTED in part and DENIED in part as set forth above. The motion for sanctions (Dkt. 15) is DENIED. If Plaintiff wishes to file an amended complaint, she must do so by April 26, 2025.

Dated this 11 day of April, 2025.

Tiffany M. Cartwright
United States District Judge